NATHANIEL R. JONES, Circuit Judge.
Appellants, Lola Gay Sloan, Tony Sloan, Lola Bettye Sloan, Ned Sloan, Jimmie Sloan, Margaret Sloan, Bruce Sloan (the Sloans) and John Sloan, appeal from the district court’s judgment, which affirmed the decision of the Bankruptcy Court. Upon consideration of the issues presented by this appeal, we affirm the Bankruptcy Court in part, reverse in part, and remand.
Becknell & Crace Coal Company, Incorporated (Becknell) entered into a “Lease-Purchase Agreement” with the appellants on January 22,1970. After Becknell began mining coal on the land described in the Lease-Purchase Agreement, Becknell and the appellants amended the Lease-Purchase Agreement by entering into two other written agreements. On January 31, 1971, Becknell gave two promissory notes total-ling $56,827.61 to satisfy its debt for royalties due in 1970 (Agreement of January 31, 1971). On August 2, 1971, Becknell gave security for a default in royalty payments and in return the appellants revoked a termination of the Lease-Purchase Agreement and scheduled deferred royalty payments (Agreement of August 2, 1971).
In May of 1972, Becknell filed a proceeding under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 301-399. ' On August 12, 1972, the appellants filed a petition to direct rejection of the Lease-Purchase Agreement as an executory contract under 11 U.S.C. § 110. Subsequently, Becknell’s Trustee, Ruben Hicks, filed an answer to the petition and asserted a fee simple interest in the real estate subject to a lien reserved for the payment of the balance of the purchase price. Then, the Trustee filed an application for an extension of time to reject or assume the executory contract and moved for an order allowing his entry onto the land for certain purposes. The Bankruptcy Court granted the motion for entry and denied as moot the petition for an extension.
After trial, the Bankruptcy Court filed its memorandum opinion. The court concluded that although the Lease-Purchase Agreement and its terms styled Becknell as a lessee, Becknell had a fee simple interest in the unmined coal. The court further concluded that the Lease-Purchase Agreement was not an executory contract within the meaning of 11 U.S.C. § 110 merely because Becknell was obligated to pay royalties. Consequently, the court entered judgment in favor of the Trustee and thereby conveyed a fee simple in the coal to Becknell, a vendor’s lien in the coal to appellants (to secure payment for the balance due on the purchase price), and a lien in the coal to Becknell’s employees (to secure payment of their wages) pursuant to Ky.Rev.Stat. § 376.150.
On appeal, the District Court for the Eastern District of Kentucky found that the Lease-Purchase Agreement granted Becknell “an estate for years to the entire property in question subject to the limitation that it mine ... according to the terms of the [Lease-Purchase Agreement] ... and a contract right to mine and remove the coal underlying the surface.” (emphasis in original) (brackets added). According to the district court, the Lease-Purchase Agreement did not give Becknell the type of contractual right subject to 11 U.S.C. § 110 because it was executory only as to Becknell’s obligation to pay. The district court, therefore, affirmed the decision of the Bankruptcy Court. John Sloan and the Sloans appealed.
As the district court noted, this appeal turns on (1) whether the Lease-Purchase Agreement conveys a fee simple title to the coal or only a lease to mine the coal and (2) whether the Lease-Purchase Agreement is executory in nature. Our review of the Bankruptcy Court’s findings employs the standards which the district court applied in its review. “[W]e examine the decision of the court from which the appeal is taken for error and the legal determinations of the district court as a reviewing tribunal are not shielded by a presumption of correctness.” Universal Minerals, Inc. v. C.A. Hughes & Company, 669 F.2d 98, 101-02 (3d Cir.1981).
*321 I. ESTATE GRANTED
The contract that created Becknell’s interest is denominated a “Lease-Purchase Agreement” and, therefore, is a hybrid agreement whose “legal effect, under Kentucky law, differs from that of a lease for the use of surface land only.” Godley v. Kentucky Resources Corp., 640 F.2d 831, 835 (6th Cir.1981). Regardless of the agreement’s denomination and hybrid characteristic, under Kentucky law “what is commonly termed a coal mining lease is regarded as the conveyance of an estate or interest in the minerals as land unless the terms of the instrument require a different construction.” Johnson v. Coleman, 288 S.W.2d 348, 349 (Ky.1956). The district court concluded that the terms of the Lease-Purchase Agreement granted Becknell two interests: an estate for years subject to the limitation that it mine according to the Lease-Purchase Agreement and a contract right to mine and remove the coal.
John Sloan contends that the terms of the Lease-Purchase Agreement granted Becknell a fee simple title in the coal subject to a condition precedent that Becknell mine over 3,000,000 tons of coal. John Sloan further contends that because Beck-nell failed to perform that condition precedent Becknell never received a fee simple title to the coal.
The Sloans contend that the terms of the Lease-Purchase Agreement granted Beck-nell a lease rather than a fee simple absolute or fee simple conditional for several reasons. First, Becknell did not have an absolute right to permanently dispose of the property. Second, the Lease-Purchase Agreement’s granting provisions gave the Sloans a right of reversion. Third, there exists no employees’ lien.
The Trustee contends that the terms of the Lease-Purchase Agreement gave Beck-nell a fee simple title for four reasons. First, the Lease-Purchase Agreement used the magic words of grant that create a fee simple. Second, Becknell paid a substantial downpayment of $100,000 and was to pay the balance of $900,000 through royalties. Third, Becknell had the right to mine coal until the coal’s exhaustion. Fourth, the Lease-Purchase Agreement was subject to an employees’ lien under Ky.Rev.Stat. § 376.150.
We believe that the terms of the Lease-Purchase Agreement granted Becknell a fee simple interest in the coal. The operable terms of the agreement support our conclusion. For example, the Lease-Purchase Agreement purported to “bargain, sell, transfer, convey and lease unto ... [Becknell and] its successors and assigns all the minable and merchantable coal in, under, and/or upon ...” certain property. The Lease-Purchase Agreement further provided that:
When One Million Dollars, ($1,000,-000.00), not including wheelage fees, has been paid to the party of the first part; party of the second part [Becknell] shall be and become owner in fee simple of all coal remaining on these premises,
(brackets and emphasis added).
We believe further that Becknell’s fee simple interest in the coal was not disturbed by either of the amendments to the Lease-Purchase Agreement. Instead, through the Agreement of January 31, 1971, Becknell gave two promissory notes in lieu of a cash payment. Through the Agreement of August 2, 1971, Becknell partially paid for its default in royalties, scheduled deferred payments for that default, assigned the proceeds from its future sales of coal, and gave an option to immediately terminate the Lease-Purchase Agreement in lieu of a presently exercisable option to terminate the Lease-Purchase Agreement and a presently exercisable demand on one of the two promissory notes.
II. EXECUTORY NATURE OF INTEREST
The district court concluded that Becknell’s contract right was not subject to 11 U.S.C. § 110 because it was not executory. John Sloan contends that the Lease-Purchase Agreement granted to Becknell a fee simple interest in the coal subject to a condition precedent — the mining of over 3,000,000 tons of coal. Because conditions precedent, according to John Sloan, are “universally described by the authorities as being executory,” John Sloan concludes *322 that the Lease-Purchase Agreement was executory.
The Sloans contend that the Lease-Purchase Agreement constituted an executory contract subject to the provisions of 11 U.S.C. § 110 because both Becknell and the Sloans were obligated to perform certain acts in the future. In support of that contention the Sloans identified a whole range of specific obligations that were to be performed by Becknell including a promise to pay the balance.
The Trustee contends that the Lease-Purchase Agreement was not executory for five reasons. First, the appellants had fully performed their obligations. Second, the only obligation that is not fully performed is Becknell’s obligation to pay the balance. Third, that unperformed obligation to pay the balance does not create an executory contract that must be accepted or rejected. Fourth, the appellants’ future obligations as listed by the Sloans are “actually rights consistent with their continued ownership of the surface and rights to monitor the method of accounting for amounts of coal removed which relate to payment for the coal.” Fifth, the Lease-Purchase Agreement was subject to an employees’ lien under Ky.Rev.Stat. § 376.150.
We believe that the contract is exec-utory. This Court has stated that:
The key, it seems, to deciphering the meaning of the executory contract rejection provisions, is to work backward, proceeding from an examination of the purposes rejection is expected to accomplish. If those objectives have already been accomplished, or if they can’t be accomplished through rejection, then the contract is not executory within the meaning of the Bankruptcy Act.
Thus, executory contracts involve obligations which continue into the future. S.Rep. No. 94-458, 94th Congress, 1st Sess. (1975). They include leases, employment contracts and agreements to buy or sell in the future. Generally, they are agreements which include an obligation for the debtor to do something in the future.
In Re Jolly, 574 F.2d 349, 350-51 (6th Cir.) (emphasis added), cert. denied, 439 U.S. 929, 99 S.Ct. 316, 58 L.Ed.2d 322 (1978). John Sloan, the Sloans, and Becknell had obligations to perform in the future. As a result, the Lease-Purchase Agreement was executory.
Because the Lease-Purchase Agreement was executory the Trustee should have been given the opportunity to assume or reject the contract. See 11 U.S.C. § 110. In the Bankruptcy proceedings the Trustee filed a petition for an extension of time to reject or assume the contract. The Bankruptcy Court, however, denied that petition as moot because it determined that the Lease-Purchase Agreement was not exec-utory. The Trustee, therefore, did not have an opportunity to assume or reject the Lease-Purchase Agreement.
We, therefore, Affirm, in part, Reverse, in part, and Remand. We also deny appel-lee’s previously-refused motion for bond increase. We note that our decision does not alter the provisions of the contract. As a result, Becknell must leave in place 300-foot blocks of coal at 1500-foot intervals. These blocks of coal as well as the surface rights were specifically reserved by the appellants.